[No. 33829. Department One. March 21, 1957.]

MORGAN COMPANY, *Appellant,* v. GAASLAND COMPANY, INC., *Respondent,* CONTINENTAL CASUALTY COMPANY, *Appellant.*[1]

*Eggerman, Rosling & Williams, DeWitt Williams,* and *Henry E. Kastner,* for appellants.

*Brown & Millhouse,* for respondent.

HILL, C. J.—This case involves a dispute between a contractor and a subcontractor as to who owes whom and how much. No authorities are cited because none are necessary; the issues are purely factual.

Gaasland Company, Inc., a corporation, hereinafter referred to as Gaasland, had a contract with the department of commerce, civil aeronautics administration, hereinafter referred to as the CAA, to construct a "VHF" (Very High Frequency) terminal station and "ILS" (Instrument Landing System) at King Salmon (Naknek), Alaska. The completion date under the contract was November 24, 1950. The contract was accepted as complete as of September 15, 1951, or 295 days late. The contract provided for liquidated damages in the amount of one hundred dollars for each day's delay in completion of the contract.

Morgan Company, also a corporation, hereinafter referred to as Morgan, was awarded the electrical subcontract, which required it to furnish labor, materials, equipment, and other facilities for the electrical work called for in the contract. The subcontract provided that Morgan

[1]Reported in 308 P. (2d) 679.

would be "bound by any provisions in the MAIN CONTRACT with the OWNER for liquidated damages, if caused by SUBCONTRACTOR."

For a considerable period of time, Morgan was unable to procure essential 51 pair, No. 19 underground control cable because of a shortage of critical materials caused by the outbreak of the Korean conflict. The cable, costing $9,506.54, was finally received at King Salmon June 18, 1951, and the installation, including the backfilling of the trenches in which it was laid, was completed July 31, 1951. The backfilling was Gaasland's responsibility under the subcontract. The contract was not accepted as completed for another forty-six days, or until September 15, 1951.

The contracting officer for the CAA, in findings dated December 7, 1951, determined that Gaasland was chargeable with the entire delay, and assessed damages at $29,500. An appeal was taken by Gaasland from the contracting officer's decision to the administrator of civil aeronautics. The appeal was instituted by a letter, some thirty pages in length, dated January 4, 1952, and dealt only with the subject of liquidated damages. By a letter dated June 29, 1953, Gaasland made the further claim that neither it as the contractor nor its subcontractor was required by the contract to furnish the 51 pair, No. 19 underground cable, as the contract did not refer to the furnishing of the cable but only to its installation. Gaasland requested reimbursement for the $9,506.54 paid for the cable and later (August 19, 1953) added to that item "the general contractor's normal mark-up of 15% overhead and 10% fee, which would be a total claim of $12,025.78."

The administrator of civil aeronautics made findings of fact and rendered his decision December 14, 1953. He found that there had been ". . . a shortage of pertinent materials, and . . . that the resultant enactment of the Defense Production Act of 1950, which provided for a priorities system and allocation of critical materials, including cable, likewise was unforeseeable to you and further prevented your subcontractor from obtaining timely delivery of the cable from any source of supply";
and accordingly granted an extension of time on the contract through July 31, 1951, the date on which the installation of the cable, including backfilling of the trench, was completed. This was an extension of 249 days and, in effect, reduced the liquidated damages by $24,900.

The administrator also held that there was no basis upon which the delay from August 1, 1951, to September 15, 1951, could be excused, since the items of work done during that period "were not contingent upon installation of the control cable but could have been performed concurrently with the cable work." This left the assessment for liquidated damages at $4,600.

He also held that under the terms of the contract the contractor was obligated to furnish the cable in question, and that there would be no reimbursement for the cost thereof.

In the present action, Morgan sued Gaasland for two items: $9,506.54 for the reasonable value of the 51 pair, No. 19 underground cable, which Morgan had purchased and installed but had at all times contended it was not required to supply; and $5,741.27, the unpaid balance due it on the subcontract.

As to the first item, the trial court held, as had the administrator of civil aeronautics, that under the terms of the contract between Gaasland and the CAA, Gaasland was required to furnish the cable. It further held that Morgan was bound, by the terms of the subcontract, to do whatever the main contract required of Gaasland so far as the electrical work was concerned. From a judgment of dismissal on that phase of its case, Morgan has taken no appeal.

Gaasland cross-complained, joining Continental Casualty Company, the corporate surety on Morgan's performance bond. Although Gaasland admits that $5,741.27 remains unpaid on the subcontract, it claims that Morgan owes it substantially more than that amount. Gaasland's itemized claim against Morgan and the trial court's allowances are as follows:

| *Gaasland's Claims* | | *Trial Court's Allowances* | |
|---|---|---|---|
| Liquidated damages for 46 days' unexcused delay, assessed against Gaasland for period subsequent to July 31, 1951 ..................... | $4,600.00 | Only nine days of unexcused delay (August 1-9, inclusive) attributable to Morgan.. | $900.00 |
| Gaasland's expense of appeal to CAA: | | | |
| Attorneys' fees ....$3,206.44 | | Morgan's proportionate share of expense of appeal to CAA, ⅞ths of total .......... | 4,208.07 |
| Travel expenses of two representatives to Washington, D. C.. 1,602.79 | 4,809.23 | | |
| Attorneys' fees in present action ...................... | 2,500.00 | Attorneys' fees in present action .. | 750.00 |
| Totals ................ | $11,909.23 | | $5,858.07 |

The trial court made decisive findings that Morgan's delay in procuring and installing the 51 pair, No. 19 cable was the principal reason for the 295-day delay in completing the contract and the $29,500 penalty, and that Morgan was therefore the primary interested party and benefited most from the successful appeal to the CAA, which resulted in a reduction of the penalty to $4,600, and should pay seven eighths of the expenses incident to that appeal (second item in court's allowances, above); and that Morgan was responsible for nine days of the unexcused delay subsequent to July 31st (first item in the court's allowances, above).

After deduction of the $5,741.27 which Gaasland admits it owes Morgan on the subcontract, from the $5,858.07 allowed Gaasland by the trial court, there remained a balance of $116.80 due Gaasland from Morgan, and for that amount, with interest and costs, the trial court entered a judgment in favor of Gaasland against Morgan and the Continental Casualty Company. Morgan and Continental appeal from that portion of the judgment.

We are, of course, aware of our many decisions stating that we will not overturn the findings of fact made by a trial court unless the evidence clearly preponderates against them. However, in this case the exhibits make a record which speaks for itself. Our examination

of the testimony, and more particularly of the exhibits bearing upon the appeal to the administrator of civil aeronautics, satisfies us that the evidence overwhelmingly preponderates against the findings made by the trial court. The exhibits, particularly the report of the contracting officer on whose findings the liquidated damages were assessed, show conclusively that the assessment was made, not because of Morgan's delay in procuring and installing the cable for which the extension of time was ultimately granted, but because of Gaasland's own delays and failures to do what was required of it under the contract notwithstanding repeated requests by the resident engineer.

It is apparent that on the appeal to the administrator of civil aeronautics Gaasland used the justifiable and excusable delay of two hundred forty-nine days by Morgan as the basis for getting its own failures and derelictions during that period excused and the liquidated damages therefor set aside. All the benefit of that appeal accrued to Gaasland; yet in this action Gaasland attempts to make Morgan pay for Gaasland's own failures to perform under the contract, and to make Morgan responsible not only for the additional forty-six days' delay beyond the installation of the cable but for the total cost of what seems to us an excessively expensive appeal. The trial court reduced Gaasland's claims from nearly twelve thousand dollars to less than six thousand. We find them completely without merit.

The basis for the trial court's conclusion that nine days of the unexcused forty-six days' delay beyond July 31, 1951, was attributable to Morgan's delay in procuring and installing the cable (first item of trial court's allowances, above) was a finding that "after the cable was laid and back-filled a reasonable time for settling and required paving with blacktop over said cable was nine days." There is no credible evidence that the trench had not been backfilled and the blacktopping completed by July 31, 1951. Gaasland relies on two witnesses, neither of whom would testify that he was at King Salmon at any time between July 31 and August 9, 1951. One testified that the settling of the backfilling would take two days but did not know how long the blacktopping would take; the other testified that the time for blacktopping would be three or four days.

It is clear that the backfill material was the identical material used for the blacktopping. It was to be placed in the ditch over the cable in not to exceed four-inch layers and was to be thoroughly compacted by rolling; "the last 2" (serving as wear course) shall be compacted by hand tamping." Note the testimony of Roy N. Gaasland:

"Q. Now, was it possible for the job to be turned over for full beneficial occupancy by the C.A.A. until that was done, I mean the cable was in and the backfill and blacktop? A. It was not possible. . . ."

Gaasland's own letter, hereinafter quoted, establishes that in its opinion the government had one hundred per cent use of all the facilities as of August 1, 1951. The administrator of civil aeronautics stated in his decision that any other work then unperformed could have been completed during the period that Morgan was laying the cable (June 18 to July 23, 1951) and the eight days in which the backfilling was being done (July 24 to 31, 1951). No justification for fur-

ther delay on the part of Gaasland was established, and certainly none for which Morgan was responsible.

Gaasland, in its letter of June 29, 1953, written in connection with its appeal to the administrator of civil aeronautics, took the position that the contract was completed as of August 1, 1951, and that it had asked for a final inspection and acceptance as of that date. (The administrator of civil aeronautics found that the final inspection was requested as of August 2nd.) The CAA inspector found quite a list of things undone at the time of that inspection but made no mention of any uncompleted backfilling or blacktopping. Gaasland's letter is illuminating:

"At the completion of the control cable installation, the Gaasland Company, Inc.'s project superintendent asked for a final inspection [August 1, 1951] and at this time the Gaasland Company, Inc., was presented with a new list of so-called deficiencies. This work is valued at an amount of $300.00 for material and labor and a complete analysis of each item is made, pages 23 to 28 of appeal document, referenced item #3 of this letter.

"It is believed that had there been amiable co-ordination and willingness to co-operate between the C.A.A. inspector and the job superintendent, these work items would have been called to the attention of the job superintendent and completed by August 1, 1951.

"The 45 days liquidated damages at $100.00 per day is considered out of line by this Company for the completion of work valued at less than $300.00, especially when all items of work were considered controversial and beyond the scope of construction by the job superintendent.

"In conclusion, as the Government had beneficial occupancy of all facilities with the exception of the control cable as of March 26, 1950 and the control cable was installed August 1, 1951 which gave 100% use of all facilities, and as the procurement of the 51 pr.—#19 control cable until June 18, 1951 was entirely beyond the control of the contractor and therefore could not be held the responsibility of the contractor, it is considered by the Gaasland Company, Inc., that no liquidated damages should be assessed by the Government."

A judgment should have been entered in favor of Morgan in the amount of $5,741.27, which Gaasland concedes it withheld from Morgan, with interest on $2,666.17 of that amount from October 15, 1951 (a "reasonable time after the completion and acceptance" of the work by the CAA), and on the remainder ($3,075.10) from January 5, 1954 (the date of final payment by the CAA to Gaasland). It follows that, irrespective of the meaning of the provision in the subcontract relative to attorneys' fees, Gaasland is not entitled to attorneys' fees in this action.

The money judgment for Gaasland against Morgan and Continental is reversed, with instructions to enter a judgment for Morgan against Gaasland in accordance with the views expressed herein.

SCHWELLENBACH, DONWORTH, FINLEY, and ROSELLINI, JJ., concur.